**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____ x

Marie Kaatz, individually on behalf of herself and          :
all others similarly situated,                                          :
                                                                                   :    Case No.
                              Plaintiff,                                     :
                                                                                   :
v.                                                                                :
                                                                                   :    **CLASS ACTION COMPLAINT**
East West Tea Company, LLC d/b/a Yogi Tea,          :
                                                                                   :    **<u>JURY TRIAL DEMANDED</u>**
                              Defendant.                                 :
                                                                                   :
                                                                                   :
                                                                                   :
                                                                                   :
_____ x

    Plaintiff Marie Kaatz (hereinafter "Plaintiff"), individually on behalf of herself and all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

    1.  This action seeks to remedy the deceptive and misleading business practices of East West Tea Company, LLC d/b/a Yogi Tea (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Yogi Echinacea Immune Support Tea product (hereinafter the "Product") throughout the state of New York and throughout the country.

    2.  Defendant has improperly, deceptively, and misleadingly labeled and marketed its Product to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that consumption of the Product may increase the risk of ingesting pesticides.

    3.  As described in further detail below, the Product contains pesticides, which could lead to serious and life-threatening adverse health consequences.

    4.  Defendant's packaging markets the Product as providing "Immune Support;" however, it fails to disclose that the Product contains, or is at the risk of containing, pesticides,

which undermines the "Immune Support" claim.

5.    A representative example of Defendant's lack of disclosure on the Product is depicted below:



6.    Consumers like Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including pesticides.

7.    Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the orally ingested products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

8.    Unfortunately for consumers, like Plaintiff, the Product they purchased contains pesticides.

9.    Defendant's own recall and other testing confirmed and demonstrated the presence of pesticides in the Plaintiff's product.

**Defendant's Recall is Insufficient**

10.    Defendant issued a recall of its Product on March 12, 2024, "because pesticide residues were detected above action levels."[1]

11.    To be eligible for a refund, a consumer must retain the Product and the consumer must "return their Echinacea Immune Support Tea to the original purchase location for a full refund."[2] This recall was deliberately designed to preclude the vast majority of consumers from receiving a recall.

12.    Defendant is well aware that any consumer who was made aware of the recall would be predisposed to throwing the Product away. Defendant is also aware that consumers shop in multiple locations and may or may not purchase the Product at the same location each time. Also, most consumers do not maintain receipts and therefore cannot obtain a refund at the purchase location for the recalled Product.

13.    Accordingly, Defendant's recall is designed to reach very few people and designed to benefit very few of the consumers who purchased the Product.

14.    The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

15.    Defendant is using a marketing and advertising campaign that omits that the Product contains pesticides. This omission leads a reasonable consumer to believe they are not purchasing a product with a known dangerous substance when in fact they are purchasing a product contaminated with pesticides.

---

[1] https://www.accessdata.fda.gov/scripts/ires/index.cfm?Product=207219
[2] https://yogiproducts.com/voluntary-recall/

16.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.  As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe for oral ingestion and does not contain any harmful substances.  Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the contents within the Product.  Thus, reasonable consumers would not think that Defendant is omitting that the Product contains, or is at risk of containing, pesticides.

17.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Product does contain, or risks containing, pesticides, which are dangerous to one's health, well-being, and even life.  Nevertheless, Defendant does not list or mention pesticides anywhere on the Product's packaging or labeling.

18.     Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Product and what is in the Product when they purchased it.

19.     Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a product contaminated with a known dangerous substance that is harmful to consumers' health.

20.     That is because Defendant's Product containing, or at risk of containing, a known dangerous substance has no value.

21.     Plaintiff and Class Members paid a price premium for the Product based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Product's label.  Given that Plaintiff and Class Members paid a premium for the Product, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

22. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§349 and 350. Defendant also breached and continues to breach its warranties regarding the Product.

23. Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

24. Defendant manufactures, markets, advertises, and sells tea products.

25. Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest. Companies, such as Defendant, have capitalized on consumers' desire for tea products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

26. Especially at the point of sale, Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances such as pesticides, and therefore must and do rely on Defendant to truthfully and honestly report what the Product contains or is at risk of containing on the Product's packaging or label.

27. The Product's packaging does not identify pesticides. Indeed, pesticides are not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of pesticides in the Product. This leads reasonable consumers to believe the Product does not contain, and is not at risk of containing, pesticides.

28. However, the Product contains, or is at risk of containing, pesticides.

29. Pesticides are chemical compounds that are used to kill pests, including insects,

rodents, fungi, and unwanted plants (weeds).[3]

30.    Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing tea products for many years, including producing and manufacturing the Product.

31.    Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Product and possesses unique and superior knowledge regarding the manufacturing process of the Product, the manufacturing process of the ingredients and raw materials the Product contains, and the risks associated with those processes, such as the risk of pesticides contamination.

32.    Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Product.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

33.    Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Product.

34.    Therefore, Defendant's false, misleading, and deceptive omissions regarding the Product containing pesticides is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

35.    Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they ingest into their bodies. Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, which includes the Product's label.  Defendant knows that if they had not omitted that the Product contained pesticides, then Plaintiff and the Class would not have

---

[3]https://www.who.int/news-room/questions-and-answers/item/chemical-safety-pesticides

purchased the Product at all.

36. Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

37. Consumers rely on marketing and information in making purchasing decisions.

38. By omitting that the Product includes pesticides on the label of the Product throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product with a harmful substance.

39. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

40. Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

41. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

42. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knows and intended that consumers would pay a premium for a product marketed without pesticides over comparable products not so marketed.

43.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

       a.   Paid a sum of money for a Product that was not what Defendant represented;

       b.   Paid a premium price for a Product that was not what Defendant represented;

       c.   Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendant warranted; and

       d.   Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendant represented.

44.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Product they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Product.

45.     Plaintiff and the Class Members paid for a Product that does not contain pesticides. Since the Product does indeed contain (or risk containing), a harmful substance, the Product that Plaintiff and the Class Members received was worth less than the Product for which they paid.

46.     Plaintiff and the Class Members all paid money for the Product; however, Plaintiff and the Class Members did not obtain the full value of the advertised Product due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

47.    Plaintiff and Class Members read and relied on Defendant's representations about the benefits of using the Product and purchased Defendant's Product based thereon.  Had Plaintiff and Class Members known the truth about the Product, i.e., that it contains a harmful substance (i.e. pesticides), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

### JURISDICTION AND VENUE

48.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York, Defendant East West Tea Company, LLC d/b/a Yogi Tea is a citizen of Oregon; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

49.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

50.    Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

### PARTIES

**Plaintiff**

51.    Plaintiff is a citizen and resident of Dutchess County, New York.  During the applicable statute of limitations period, Plaintiff purchased and used Defendant's Product that contained pesticides, specifically the Product that was subject to the recall.  During the class period Plaintiff purchased Defendant's Product at retail outlets including Shop Rite and Stop & Shop

brick-and-mortar stores in Dutchess County, New York during the Class Period for an approximate retail price of $4.50.

52.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Product, Plaintiff would not have been willing to purchase the Product.  Plaintiff purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product.  The Product Plaintiff received was worthless because it contains the known harmful substance, pesticides.  Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

53.     Defendant, East West Tea Company, LLC d/b/a Yogi Tea, is a corporation with its principal place of business in Eugene, Oregon.  East West Tea Company, LLC d/b/a Yogi Tea is one of the largest manufacturers of tea products in the United States and responsible for producing some of the most popular tea products at frequented retail locations, including the Product.

54.     Defendant manufactures, markets, advertises, and distributes the Product throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of the Product.

## CLASS ALLEGATIONS

55.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution.

56.    The Class is defined as all consumers who purchased the Product anywhere in the United States during the Class Period.

57.    Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the state of New York at any time during the Class Period (the "New York Subclass").

58.    The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

59.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

60.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

61.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Product;

c.   Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Product;

d.   Whether Defendant's false and misleading statements and omissions concerning its Product was likely to deceive the public; and

e.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

62.   <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Product.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

63.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

64.   <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

65.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

> h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

> i.  It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Product.

66.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

67.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

68.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

69.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Product.

70.     There is no adequate remedy at law.

14

71.     Defendant misleadingly, inaccurately, and deceptively advertise and market its Product to consumers.

72.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Product has pesticides —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Product and to use the Product when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

73.     Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased a Product that was mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

74.     Defendant's advertising and Product's packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Product.

75.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

76.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

77.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

78.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

79.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

80.    Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Product inasmuch as it misrepresents that the Product is safe for use and doesn't list that the Product contains pesticides.

81.    Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased a Product that was mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

82.    Defendant's advertising, packaging, and Product's labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Product.

83.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

84.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

85.    Defendant made the material misrepresentations described in this Complaint in its advertising and on the Product's packaging and labeling.

86.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

87.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and All Class Members)**

88.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

89.    Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Product is safe for use and does not contain pesticides.

90.    Defendant omitted that the Product contains a known dangerous substance from its ingredients labeling.  This omission would lead reasonable consumers to believe that the Product did not contain a known dangerous substance, when in fact, the Product was contaminated with pesticides as stated herein.

91.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

92.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

93.    Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Product.

94.    Defendant knowingly breached the express warranties by including pesticides in the Product sold to Plaintiff and the Class without properly notifying them of their inclusion in the Product.

95.    Within a reasonable time after it knew or should have known, Defendant did not change the Product's label to include pesticides in the ingredients list or to otherwise warn consumers that the Product contains, or is at risk of containing, pesticides.

96.    Defendant thereby breached the following state warranty laws:

    a.    Code of Ala. § 7-2-313;

    b.    Alaska Stat. § 45.02.313;

    c.    A.R.S. § 47-2313;

    d.    A.C.A. § 4-2-313;

    e.    Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.    R.S.A. 382-A:2-313;

dd.    N.J. Stat. Ann. § 12A:2-313;

ee.    N.M. Stat. Ann. § 55-2-313;

ff.    N.Y. U.C.C. Law § 2-313;

gg.    N.C. Gen. Stat. § 25-2-313;

hh.    N.D. Cent. Code § 41-02-30;

ii.    II. O.R.C. Ann. § 1302.26;

jj.    12A Okl. St. § 2-313;

kk.    Or. Rev. Stat. § 72-3130;

ll.    13 Pa. Rev. Stat. § 72-3130;

mm.    R.I. Gen. Laws § 6A-2-313;

nn.    S.C. Code Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313; and

xx.    Wyo. Stat. § 34.1-2-313.

97.     As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff and Class Members were damaged in the amount of the price they paid for the Product, in an amount to be proven at trial.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages and treble damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding punitive damages;

(f) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

Dated: May 24, 2024

**SULTZER & LIPARI, PLLC**

By:    Jason P. Sultzer /s/

_____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Nick Suciu III, Esq.
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

*Counsel for Plaintiff and the Class*